IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 26, 2016

**STATE OF TENNESSEE v. ELIZABETH GRISWOLD**

**Appeal from the Circuit Court for Blount County**
**No. C22567, C22568        David R. Duggan, Judge**
_____

**No. E2015-02259-CCA-R3-CD – Filed January 5, 2017**
_____

Defendant, Elizabeth Griswold, appeals the trial court's revocation of her community corrections sentence and the imposition of a sentence of confinement. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddle Kirk, Knoxville, Tennessee (on appeal); and Mack Garner, District Public Defender, Maryville, Tennessee (at trial), for the appellant, Elizabeth Griswold.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Michael L. Flynn, District Attorney General; and Clinton Frazier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

Defendant entered best interest guilty pleas to criminal simulation and theft of property less than $500 in value. She received an effective sentence of two years to be served on community corrections. On June 17, 2015, a violation warrant was issued alleging that Defendant violated the terms of her community corrections by:

- Rule 5: The defendant tested positive for opiates and alcohol upon her admission to the Blount Memorial Hospital emergency room on June 6, 2015.

- Rule 9: The defendant failed to comply as provided in two written warnings given on May 1, 2015, and May 18, 2015.

At the revocation hearing, Robin Turnmire, a treatment specialist with Blount County Community Corrections, testified that she was Defendant's counselor while Defendant was under supervision in the community corrections program. She said that recently Defendant had "been absconded from a warrant. When we - - when the warrant was written, she was given the opportunity to turn herself in and she chose not to do so." Prior to that time, Defendant had been issued two written warnings as well as many verbal warnings.

Ms. Turnmire testified that Defendant received a written warning on May 1, 2015, because:

> She had an unexcused absence from group [sic] on 3-24-15, in that she kept saying that she would provide a doctor's note but never did provide a doctor's note for that absence. She also failed to attend two peer recovery meetings per week, which is what she had signed with the behavior contract when she came out to us this time. She had failed to obtain a sponsor at those peer recovery support meetings.

Ms. Turnmire also noted that Defendant had "previously been on Community Corrections and had already had one warning with us and a violation, had spent some jail time and then came back out again."

Ms. Turnmire testified that Defendant received a second written warning on May 19, 2015, she said:

> On May the 19th, and I got very specific with what would have instead been a warrant at that time, Rule 5, failing to be available for random medication counts, as she had been instructed and as she had agreed to; Rule Number 20, failing to make daily check-in phone calls as she had been instructed and as she had agreed to; Rule Number 4, failing to provide a current telephone number; Rule Number 14, failing to pay monthly supervision fee - - at that point she was six months behind; Rule Number 15, failing to pay court costs since July of 2014.

Ms. Turnmire testified that Defendant had never, during the time that she was supervised by Ms. Turnmire, been able to "maintain compliance even with basic requests, like daily phone call check-ins."

Ms. Turnmire testified that she had continued to try "multiple things" with Defendant's treatment.  She said:

> Over the course of what we have tried, we have tried to involve her in a primary substance abuse treatment program.  She only will qualify for an intensive outpatient program because of the medications that she is prescribed and needs for a variety of different reasons, both physical and mental health.  We did have her enrolled in an intensive outpatient program.  She continued to have some absences from them as well.  The only reason that was not also included is because we couldn't get clear documentation from them one way or the other about those absences.  But verbally the facilitator for that program said that she had had continued absences from that program as well.
>
> In the time after these warnings were written, I was seeing her individually - - trying to see her individually and she was supposed to be attending Moral Reconation Therapy, which is a weekly cognitive behavioral program to reduce criminal recidivism.
>
>       \*      \*      \*
>
> She was not adequately participating in MRT.  And as far as individual sessions, she would in the session agree to - - say she understood the problem, that she agreed she knew what to do to fix it, here's the steps and we went over that.  And she would demonstrate that she agreed and she understood and then her behavior would not match.  As soon as she would leave the office, things would change again and she would fail to comply.

Ms. Turnmire testified specifically that Defendant failed to comply with daily phone check-ins, the keeping of a current phone number for medication checks, and continuing to get medication approved before taking it. She said that Defendant understood the rules, but failed to comply with them.

Ms. Turnmire testified that the community corrections violation was filed against Defendant because she brought documentation for another absence.  "And in the lab results for that, it - - the lab results from the hospital said that [Defendant] had alcohol in her system."  Ms. Turnmire testified that Defendant was not allowed to have alcohol at any time while on community corrections.  The lab results also showed that Defendant had opiates in her system.  At that time, Defendant had not informed anyone that she had

been prescribed any opiate medication. Ms. Turnmire noted that Defendant was supposed to inform community corrections of any prescribed medication before taking it.

On cross-examination, Ms. Turnmire agreed that Defendant had both physical and mental health problems. She also testified that Defendant has a "substance use disorder." Ms. Turnmire agreed that Defendant was at times required to take mood-altering substances by her doctors for medical reasons. She testified that Defendant's requirement to report "varied at times based on some of her medical needs." At the time the warrant was issued, Defendant was required to report "at least weekly." Defendant was also required to call in while her foot was injured so that her medication could be monitored at a "higher level." Ms. Turnmire testified that although Defendant received a disability check, she did not notice that Defendant had any cognitive impairment. She was aware that Defendant's mental health issues were "more mood issues rather than cognitive issues."

Hilary Storie, Defendant's probation officer with community corrections, testified that her supervisor, Brian Hensley, filed a violation of community corrections report against Defendant while Ms. Storie was on vacation. Ms. Storie testified that the warrant was filed "[f]or the medical records being brought from the hospital, showing the positive results for opiates and alcohol and then her continued non-compliance with rules." Ms. Storie noted that Defendant was required to pay fifteen dollars per month and that she had "not paid on her supervision fees for months and had not paid on court costs, as well."

Defendant testified that she called in and talked to Ms. Turnmire twice a day. She also disagreed that she failed to provide Ms. Turnmire with a phone number. Defendant testified:

> I was in surgery during this time. The effect of the anesthesia apparently had an effect on me. But I do not remember three days. My family, my daughter, and my fiancé told me I was acting very weird, doing things - - running around the house acting like a dog.
>
> *      *      *
>
> Stuff I don't remember. And so when I first came to the realization, I called Ms. Hilary immediately at home and I called Robin a couple of times at home, trying to get in touch with somebody as soon as I remembered.

4

Concerning her positive test for alcohol, Defendant testified that she did not "drink whatsoever." She also said that she did not take any opiates and that she was on Tramadol, "which does show up as a opiate, that's what I was told by my doctor." Defendant testified that she provided Ms. Turnmire or Ms. Storie with a copy of her prescription for Tramadol and another prescription. She said that she told them to shred the other prescription. Defendant indicated that this occurred about two weeks after surgery on her foot.

Defendant agreed that Ms. Turnmire and Ms. Storie told her to turn herself in after the violation was filed on June 17, 2015. However, Defendant said that her foot was "cut open," and she did not comply with their request. Defendant was then arrested at her home on September 15, 2015. She said that her foot was still in a cast at the time. Defendant testified that she receives $895 per month in disability, and she had a payment arrangement with the "Justice Center" to pay five dollars per month on her court costs. Defendant agreed that she understood what Ms. Turnmire told her that she needed to do. However, she claimed that "there is an imbalance that I forget everything." Defendant noted that she had been diagnosed "with bipolar, bipolar axis II, severe depression, severe anxiety." However, she had begun taking medication that was working well. She noted that she was not allowed the medications while in jail. Defendant also told the trial court that she served in the military and had been diagnosed with post-traumatic stress disorder. Defendant felt that if placed back on community corrections she could comply with the rules and that her daughter was moving back in to help her.

On cross-examination, Defendant admitted that she had previously violated her community corrections because she was "on some kind of medication[.]" She was then placed back on community corrections. She agreed that the rules of community corrections were reviewed with her. Defendant did not "remember the alcohol class, narcotic class" because she did not use "recreational drugs." She said that she had brought her prescriptions to Ms. Turnmire several times. Defendant admitted that she had two written warnings prior to the community corrections violation report being filed. She did not turn herself in after the violation warrant was issued because she had a "cut open foot."

*Analysis*

The decision to revoke a community corrections sentence or probation rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation has occurred. *State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991) (applying the probation revocation procedures and principles contained in Tennessee Code Annotated section 40-35-311 to the revocation of a community corrections placement based upon "the similar

5

nature of a community corrections sentence and a sentence of probation"). The trial court is required only to find that the violation of probation or community corrections occurred by a preponderance of the evidence. *See* T.C.A. § 40-35-311(e); *see also id.* § 40-36-106(e)(3)(B). In reviewing the trial court's findings, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment rather than an arbitrary one. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). After finding a violation of a defendant's community corrections, the "court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community based alternative to incarceration." T.C.A. § 40-36-106(e)(4). If the trial court resentences a defendant to a more severe sentence than originally imposed, it must conduct a sentencing hearing in accordance with the 1989 Sentencing Act. *See State v. Crook*, 2 S.W.3d 238, 240 (Tenn. Crim. App. 1998). When a trial court does not alter "the length, terms or conditions of the sentence imposed," a new sentencing hearing is not required. T.C.A. § 40-36-106(e)(2); *see State v. Samuels*, 44 S.W.3d 489, 493 (Tenn. 2001).

Defendant argues that the trial court abused its discretion in revoking her community corrections sentence, and she asserts that the trial court should have ordered her sentence to be served in split confinement. She also asserts:

> The suggested split confinement would have imposed a reasonable penalty for the Defendant's transgressions, while acknowledging that those transgressions may have been in part due to her memory problems, medical issues and anxiety, and offering her a second opportunity to benefit from the cognitive therapy treatment offered as part of her community corrections.

Based on our review of the record, we conclude that the trial court did not abuse its discretion in finding that Defendant had violated the conditions of her community corrections sentence and by ordering her to serve her two-year sentence in confinement. In considering the revocation, the trial court made the following findings:

> All right. Upon this proof and the Court finds the State's proof to be credible, the Court finds that she has engaged - - [Defendant] has engaged in a material violation of the terms of her Community Corrections sentences, based upon Blount Memorial Hospital medical records showing positive results for alcohol following an admission to the emergency room on June 6, 2015, and non-compliance with the rules as evidenced by the written warnings that are before the Court as Exhibits 1 and 2, including, as contained in those warrants, unexcused

absences - - or an unexcused absence, rather, from MRT on March 24, 2015; failing to attend two peer recovery meetings per week; failing to obtain a sponsor as directed; failing to be available for random pill counts; failing to make daily check-in phone calls; failing to provide a current telephone number; failing to pay supervision fees and court costs.

Now, [Defendant's] situation certainly is a sad one, no doubt complicated by mental illness and physical problems, potentially including from her testimony post-traumatic stress disorder. I don't have any information on that, but I have no reason to doubt her word here this morning. It's a sad case.

And I've heard the testimony that perhaps she is able to stay on Community Corrections, but the Court cannot find that she is going to be able to do that. I can't find that. If I had some reasonable alternative, I would order it, but I don't know what that alternative is. . . .
Based upon these material violations, I am going to revoke her Community Corrections sentences and I'm going to order her to serve these sentences with all credit that she's entitled to which we will announce on the record in just a moment.

The trial court considered Defendant's mental and physical health and determined that Defendant could not remain on community corrections. The record supports the trial court's decision. The record reflects that Defendant had previously violated the terms of her community corrections and served a portion of her sentence before being released back on community corrections. Ms. Turnmire testified that Defendant had no cognitive difficulties, and Defendant understood the rules. She said that Defendant received two written warnings as well as many verbal warnings after the first violation. Ms. Turnmire noted that Defendant was unable to "maintain compliance with even the basic requests, like daily phone call check-ins." Ms. Turnmire also tried "multiple things" with Defendant to help her with treatment. Ms. Turnmire testified that Defendant understood that she was not permitted to consume alcohol "of any kind at any time." However, Defendant brought in documentation for another absence which contained lab results from the hospital which indicated that Defendant had alcohol and opiates in her system. At that time, Defendant had not informed anyone that she had been prescribed any opiate medication. Ms. Turnmire noted that Defendant was supposed to inform community corrections of any prescribed medication before taking it. Therefore, Defendant is not entitled to relief on this issue.

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

7